**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF LOUISIANA**
**MONROE DIVISION**

| | | |
|---|---|---|
| **ENABLE MISSISSIPPI RIVER TRANSMISSION, LLC** | § § § | **CIVIL ACTION NO. 15-01625** <br> **JUDGE ROBERT G. JAMES** |
| **VERSUS** | § § | |
| **LINN ENERGY HOLDINGS, LLC, *ET AL.*** | § § § | **MAGISTRATE JUDGE KAREN L. HAYES** |

---

# MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

---

# TABLE OF CONTENTS


| | Page |
|---|---|
| Table of Contents | ii |
| Table of Authorities | iii |
| Memorandum in Support | 1 |
| I. Allegations and Regulatory Backgrounds | 2 |
| A. Regulatory Context | 2 |
| B. The Complaint | 4 |
| II. Law and Argument | 6 |
| A. This Court Lacks Federal Subject Matter Jurisdiction And Dismissal Pursuant To Rule 12(b)(1) Is Required. | 6 |
| 1. The Complaint Does Not State A Claim Under The Natural Gas Act. | 7 |
| 2. Enable's Claims Do Not Raise A Substantial Federal Question. | 9 |
| 3. Enable Failed To Exhaust Its Administrative Remedies. | 11 |
| 4. This Court May Decline Jurisdiction Under The Declaratory Judgment Act. | 13 |
| B. Rule 12(b)(6) Requires Dismissal Of Enable's Claims. | 14 |
| 1. Enable's Claims Are An Impermissible Collateral Attack On The FERC Certificate And The Series 206 Orders. | 15 |
| 2. Enable Has No Claim For Violation Of The Correlative Rights Doctrine. | 17 |
| III. Conclusion | 18 |

## TABLE OF AUTHORITIES

**CASES** **PAGE**

*Arena v. Graybar Elec. Co., Inc.*,
669 F.3d 214, 215 (5th Cir. 2012) ....................................14

*Ashcroft v. Iqbal*,
556 U.S. 662 (2008)....................................15

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................................15

*Brillhart v. Excess Ins. Co.*,
316 U.S. 491 (1942)....................................13

*Brown v. Alice-Sydney Oil Co.*,
343 So.2d 745 (La. App. 2d Cir. 1977) ....................................17

*Cadeville Gas Storage, LLC v. 15.35 Acres of Land in Ouachita Parish, La., et al.*,
12-2768, 2013 WL 6816392, slip op. (W.D. La. 12/20/13) ....................................15

*Celestine v. TransWood, Inc.*,
467 F. App'x 317 (5th Cir. 2012) ....................................7

*Christianson v. Colt Indus. Operating Corp.*,
486 U.S. 800 (1988)....................................10

*Clark v. Gulf Oil Corp.*,
570 F.2d 1138 (3d Cir. 1977)....................................9

*Columbia Gas Transmission LLC v. Singh*,
707 F.3d 583 (6th Cir. 2013) ....................................8, 9, 10

*Coury v. Prot*,
85 F.3d 244 (5th Cir. 1996) ....................................7

*Cox v. Int'l Union of Operating Eng'*
672 F.2d 421 (5th Cir. 1982) ....................................11

*El Paso Natural Gas Co. v. Sun Oil Co.*,
708, F.2d 1011 (5th Cir. 1983) ....................................1

*Empire Healthchoice Assurance Inc. v. McVeigh*,
547 U.S. 677 (2006)....................................6

*F.P.C. v. Hope Natural Gas Co.*,
320 U.S. 591 (1944).................................... 1, 10-11

*Franchise Tax Brd. of Cal. v. Const. Laborers Vacation Trust for S. Cal.*,
463 U.S. 1 (1983)....................................................6, 9

*Henry J. Ellender Heirs, LLC v. Exxon Mobil Corp., et al.*,
14-711, 42 F. Supp. 3d 812 (E.D. La. 8/26/14) ....................................................11

*Hitt v. City of Pasadena*,
561 F.2d 606 (5th Cir. 1977) ....................................................7

*Interstate Natural Gas Co. v. FPC*,
331 U.S. 682 (1947)....................................................1

*Interstate Oil Pipe Line Co. v. Guilbeau*,
217 La. 160, 46 So.2d 113 (La. 1950) ....................................................17

*Johnson v. Shelby, Miss.*,
135 S.Ct. 346, 347, 2014 WL 5798626 (2014)....................................................15

*Krim v. pcOrder.com, Inc.*,
402 F.3d 489 (5th Cir. 2005) ....................................................7, 8

*Lawson v. Callahan*,
111 F.3d 403, 405 (5th Cir. 1997) ....................................................13

*Meliezer v. Resolution Trust Co.*,
952 F.2d 879, 882 (5th Cir. 1992) ....................................................12

*Monroe v. Otwell*,
09-0394 (W.D. La. 7/17/09), 2009 WL 2146482, *2 ....................................................7

*Oliver v. Trunkline Gas Co.*,
796 F.2d 86 (5th Cir. 1986) ....................................................11

*O'Meara v. Union Oil Co. of Cal.*,
33 So. 2d 506 (La. 1947) ....................................................12

*Pan Am. Petroleum Corp. v. Del Sup. Ct.*,
366 U.S. 656 (1961)....................................................8

*Pennzoil Co. v. F.E.R.C.*,
645 F.2d 360 (5th Cir. 1981) ....................................................8

*Pub. Serv. Comm'n v. Wycoff*,
344 U.S. 237, 246 (1952)....................................................14

*Port Drum Co. v. Umphrey*,
852 F.2d 148 (5th Cir. 1988) ....................13

*Ramming v. United States*,
281 F.3d 158 (5th Cir. 2001) ....................7

*Rivet v. Regions Bank of La*.,
522 U.S. 470 (1988)....................8

*Singh v. Duane Morris, LLP*,
538 F.3d 334 (5th Cir. 2008) ....................6, 9, 10

*Smith v. Reg'l Transit Auth*.,
756 F.2d 340 (5th Cir. 2014) ....................7

*S. Natural Gas Co. v. Mound Co*.,
229 F. Supp. 422 (E.D. La 1964)....................12

*S. Natural Gas Co. v. Poland*,
406 So. 2d 657 (La. App. 2d Cir. 1981) ....................17

*Superior Oil Co. v. Pioneer Corp*.,
706 F.2d 603, 606 (5th Cir. 1983) ....................11

*Trahan v. Superior Oil Co*.,
700 F.2d 1004, 1015 (5th Cir. 1983) ....................17

*Webster v. Askew*,
371 F. Supp. 733 (N.D. Fl., Tallahassee Div. 5/24/73) ....................14

*Williston Basin Interstate Pipeline Co. v. Exclusive Gas Storage Leasehold & Easement in the Cloverly Subterranean Geological Formation*,
524 F.3d 1090 (9th Cir. 2008) ....................8, 16

*Wilton v. Seven Falls Co*.,
515 U.S. 277, 286 (1995)....................13

**STATUTES**

15 U.S.C. § 717....................1, 2, 5, 12

15 U.S.C. § 717b....................1, 3, 8

15 U.S.C. § 717f ....................1, 2, 3, 8, 12, 13, 16

15 U.S.C. § 717h....................9

15 U.S.C. § 717r ........................................................................ 12, 13

15 U.S.C. § 717s ........................................................................ 8, 13

15 U.S.C. § 717u ........................................................................ 8

28 U.S.C. § 1331 ........................................................................ 5

28 U.S.C. § 1337 ........................................................................ 5

28 U.S.C. § 2201 ........................................................................ 4, 13

Fed. R. Civ. P. 12(b)(1) ........................................................................ 2, 6, 7, 8, 14, 18

Fed. R. Civ. P. 12(b)(6) ........................................................................ 2, 6, 14, 18

La. Rev. Stat. § 30:1 ........................................................................ 2, 10

La. Rev. Stat. § 30:12 ........................................................................ 11, 12, 17

La. Rev. Stat. § 30:22 ........................................................................ 1

La. Rev. Stat. § 31.1 ........................................................................ 10

La. Rev. Stat. § 31:6 ........................................................................ 17

La. Rev. Stat. § 31.7 ........................................................................ 17

La. Rev. Stat. § 31.10 ........................................................................ 18

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

This matter involves the highly regulated areas of natural gas storage and gas production and raises issues that should be brought before the appropriate federal and state regulatory authorities instead of this Court.[1]

Defendant Linn Energy Holdings, LLC ("Linn") owns certain oil and gas production wells that were formerly owned and operated by Defendant Devon Energy Production Company, L.P.[2] ("Devon") (Linn and Devon are collectively referred to as "Producers") located in the Ruston Oil and Gas Field in Lincoln Parish, Louisiana.[3] Plaintiff, Enable Mississippi River Transmission, LLC ("Enable"), owns and operates the West Unionville Storage Facility (the "Facility"), an underground gas storage reservoir in Lincoln Parish. Doc. 1, p. 5, ¶ 12. Enable contends that its stored gas has migrated from the Facility, allowing Linn, and formerly Devon, to produce Enable's stored gas from their wells.

Based on these contentions, Enable asserts claims against Linn and Devon under the NGA and the Louisiana Mineral Code. But, Enable has no basis to invoke this Court's federal

---

[1] Gas storage is regulated by the Federal Energy Regulatory Commission ("FERC") under the Natural Gas Act (the "NGA") and by the Louisiana Office of Conservation under Title 30 of the Louisiana Revised Statues ("Title 30"). *See* 15 U.S.C., § 717, *et seq.*; La. Rev. Stat. § 30:22, *et seq.* Importantly, oil and gas production activities are not subject to FERC regulation and are excluded from the scope of the NGA. *See* 15 U.S.C. § 717(b); *El Paso Natural Gas Co. v. Sun Oil Co.,* 708 F.2d 1011, 1016 (5th Cir. 1983) (explaining that Congress intended to regulate only interstate sales of natural gas, leaving the regulation of intrastate sales and the production of gas to the states) (*citing Interstate Natural Gas Co. v. FPC,* 331 U.S. 682, 690 (1947)); *F.P.C. v. Hope Natural Gas Co.*, 320 U.S. 591, 613 (1944) (explaining that the NGA "does not intrude on the domain traditionally reserved for control by state commissions; and the Federal Power Commission was given no authority over the production or gathering of natural gas.").

[2] Devon Gas Operating, Inc. ("Gas Operating") and Devon Gas Services, L.P. ("Gas Services") have also been named as defendants. Neither of these entities owned, operated, or controlled the wells at issue in this lawsuit. Solely for the purpose of this motion to dismiss, the allegations against Gas Operating and Gas Services are accepted as true. Dismissal of Gas Operating and Gas Services will be later sought should this motion be denied.

[3] The Complaint identifies fifteen gas wells, including seven active wells, seven inactive wells, and one plugged and abandoned well, and states that "in 2014 the ownership and obligations of these wells was transferred" from Devon to Linn. Doc. 1, p. 8-11, ¶ 23. Though Devon no longer operates or otherwise has an interest in the fifteen wells, the wells identified in the Complaint are referred to herein as "Producers' Wells" for ease of reference.

subject matter jurisdiction. And its allegations constitute a collateral attack on actions of both federal and state agencies and fail to disclose any violation of the Louisiana Mineral Code. Accordingly, this matter should be dismissed pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6).

## I. ALLEGATIONS AND REGULATORY BACKGROUND

### A. Regulatory Context

Enable's Facility is regulated by FERC under the NGA, 15 U.S.C. § 717, *et seq*., and by the Louisiana Office of Conservation under Title 30, La. Rev. Stat. § 30:1, *et seq*. The NGA requires regulated gas storage operators, such as Enable, to acquire a Certificate of Public Convenience and Necessity ("CPCN") from FERC before construction, acquisition, operation, removal, or abandonment of a regulated facility. The NGA also requires FERC to consider and issue a CPCN "authorizing such acts or operations" before a regulated entity may expand an existing facility. 15 U.S.C. § 17(f)(c)(1)(A).

Enable's predecessor was authorized to construct and operate the Facility pursuant to a CPCN (the "Certificate") issued under the NGA in December 1968 by FERC's predecessor agency, the Federal Power Commission. Doc. 1-2, p. 1. The Certificate authorizes "the development and operation of the Vaughn Sand Cotton Valley Formation, West Unionville Field, Lincoln Parish, Louisiana, as an underground natural gas storage reservoir." The Certificate does not describe the precise geographic and geological boundaries of the Facility but instead references a description contained in the application pursuant to which the Certificate issued. The Certificate also authorizes the construction and operation of specific facilities as part of the West Unionville Storage Facility, including authorizing the drilling of sixteen new wells and reworking of twelve existing wells to be used as injection-withdrawal or observation wells, and authorizing the construction of dehydration facilities, a compressor station, and pipelines.

Doc. 1-2, p. 1. But the Certificate does not reference or grant any rights relating to any of Producers' Wells or to the field or tract where they are located.[4] Rather, the authority granted by the Certificate is limited by the boundaries of the Facility. The boundaries of the Facility and Enable's corresponding authority under the Certificate cannot be expanded without additional authorization from FERC. *See* 15 U.S.C. § 717(b).

Though Enable alleges that the Facility is operated, regulated, and governed entirely by federal law, the Complaint states that the Facility also is operated pursuant to "lawfully entered orders" of the Louisiana Office of Conservation (the "Series 206 Orders"), which are attached to and made part of the Complaint. Doc. 1-2, p. 4-13. The initial Series 206 Order was issued in April 1968, before FERC issued the Certificate, pursuant to an application for the establishment of "regulations governing the injection, storage and withdrawal of gas from the Vaughn Sand (Western Reservoir) in the [previously established] Unionville Gas Storage Pool in the Unionville Field." *Id.* at 4. Notably, the initial Series 206 Order contains an express finding that the Western Reservoir "is a closed reservoir which is effectively separated from the Vaughn Sand" in the East Reservoir. *Id.* at 4. Enable acknowledges that its Facility is operated pursuant to the "lawful" Series 206 Orders and that such orders establish that the storage reservoir is "closed." Doc. 1, p. 3, ¶ 6, p. 13, ¶ 13. But inconsistent with this express finding in the Series 206 Order, Enable alleges that storage gas is migrating from the *closed* storage reservoir.

The relief requested by Enable seeks to overturn or modify FERC's and the Commissioner's actions. But, the proper place to bring these claims is before FERC and the Commissioner.

[4] Because the production of oil and gas is expressly excluded from the scope of the NGA, 15 U.S.C. § 717(b), FERC has no authority over their activities.

**B. <u>The Complaint</u>**

Enable filed suit against Linn and Devon on May 4, 2015, alleging that storage gas is migrating from the *closed* Vaughn Sand Reservoir and being produced through the Producers' Wells. Though Enable recognizes that not all natural gas injected and stored in a reservoir is expected to be recovered, Enable alleges that the Facility's volumes of unrecoverable gas, known as "non-effective gas," were "unusual" and that, after conducting an investigation, it believes that gas was migrating to an "adjacent" productive reservoir in the Ruston Field. Doc. 1, p. 6-8, ¶¶ 15-22.[5] The Complaint states that gas escaped the Facility's "closed" reservoir and migrated to Ruston Field where it was and continues to be produced from the Producers' Wells. Doc. 1, p. 12, ¶ 28. Enable claims that this alleged production infringes on its enjoyment of rights to the escaped storage gas. *Id*. Enable further alleges that it shares a quasi-contractual relationship and reciprocal rights in a "common mineral reservoir" with Linn and Devon pursuant to the Louisiana Mineral Code provisions establishing the principle of correlative rights of parties who share rights in a common reservoir. Doc. 1, p. 12, ¶¶ 26-27.

Based on these allegations, Enable seeks declaratory relief pursuant to the Federal Declaratory Judgment Act,[6] as well as general and equitable relief, and prays for the following:

(1) Judgment establishing that the storage gas injected into the Facility was and is at all times Enable's property and that Producers' operations in a separate, "adjacent" reservoir in the nearby Ruston Field infringe on Enable's rights;[7]

---

[5] The Complaint states that Producers' Wells "currently operate near the West Unionville Gas Storage Facility in the adjacent Vaughn Sand Reservoir, Ruston Field, Lincoln Parish, Louisiana, as established pursuant to Order No. 164, dated April 6, 1949, and thereafter modified by Order No. 164-B….issued by the State of Louisiana, Department of Conservation." Doc. 1, p. 8-9, ¶ 23.

[6] *See* 28 U.S.C. § 2201 (permitting "any court of the United States, upon the filing of an appropriate pleading, [to] declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.").

[7] Doc. 1, p. 12-13, ¶¶ 29-31.

> (2) Accounting from first production of the total volume of gas produced from the relevant wells and the total net revenues received by Producers for such production;[8] and
>
> (3) Judgment requiring Producers to plug and abandon Producers' wells "that are producing storage gas injected into" the Facility and to compensate Enable "for any and all gains, profits or enhancements received by Producers casually related thereto," including any profits from the sale of storage gas produced from Producers' wells.[9]

Doc. 1, p. 13, ¶ 30.

The Complaint attempts to invoke this Court's subject matter jurisdiction under 28 U.S.C. §§ 1331 (federal question) and 1337 (interstate commerce and anti-trust) by referencing the general provisions of the NGA, 15 U.S.C. § 717 *et seq*., and the FERC Certificate authorizing the construction and operation of the Facility. Doc. 1, p. 2-3, ¶ 4. However, there is no reference to any particular provision of the NGA as a basis for subject matter jurisdiction. Rather, the Complaint merely states that this Court has subject matter jurisdiction over the case pursuant to 28 U.S.C. §§ 1331 and 1337 "because Plaintiff's claims involve the withdrawal of natural gas *from* a federally certificated underground storage reservoir." Doc. 1, p. 2 (emphasis added).

But the Complaint never alleges or even suggests that the defendants are using Enable's Facility to produce this gas. Instead, the Complaint states that gas has *migrated from* the Facility and is being *produced from* the Producers' Wells located outside the boundaries of the Facility.[10] Enable is apparently attempting to invoke federal subject jurisdiction matter by essentially alleging that Linn and Devon have interfered with Enable's rights and obligations under the NGA:

> Plaintiff's rights in and to the West Unionville Storage Facility, its related facilities and the natural gas contained therein are derived exclusively from Federal Law pursuant to the NGA. Plaintiff's facility is operated under, governed, regulated by, and subject to

---

[8] Doc. 1, p. 13, ¶ 32.
[9] Doc. 1, p. 14-15, ¶ 35.
[10] Doc. 1, p. 6, ¶¶ 16-17, p. 8, ¶ 21, pp. 8-9, ¶ 23.

> the exclusive jurisdiction of the FERC and the claims affect substantial rights and obligations arising under Federal Law rendering subject matter jurisdiction proper in this case. Further to the extent that the claims involve questions of state law, the Court has pendent jurisdiction.

Doc. 1, p. 2-3, ¶ 4. Enable claims that "this lawsuit [is] a necessity" because "Devon and Linn deny that their wells have produced or are currently producing Enable's storage gas from the West Unionville Storage Facility." Doc. 1, p. 11, ¶ 25.

As demonstrated below, Enable has not asserted a claim under the NGA or a cause of action that raises a substantial issue of federal law. Thus, the Complaint fails to invoke this Court's federal subject matter jurisdiction. Furthermore, the Complaint fails to state a plausible claim for relief because Enable's claims constitute an impermissible collateral attack on the agency actions made by FERC and the Commissioner in the certificate and orders authorizing and regulating Enable's gas storage reservoir, and the Complaint fails to allege sufficient facts to give rise to a claim under the Louisiana Mineral Code. Accordingly, the Complaint should be dismissed pursuant to Federal Rule of Civil Procedure Rule 12(b)(1) or, alternatively, Rule 12(b)(6).

## II. LAW AND ARGUMENT

### A. This Court Lacks Federal Subject Matter Jurisdiction And Dismissal Pursuant To Rule 12(b)(1) Is Required.

Enable's claims do not invoke this Court's subject matter jurisdiction because they do not "arise under" federal law or "necessarily raise a federal question." *Singh v. Duane Morris LLP*, 538 F.3d 334, 338 (5th Cir. 2008). A case "arises under" federal law if a well-pleaded complaint establishes that either (1) federal law creates the cause of action, or (2) the plaintiff's right to relief necessarily depends on resolution of a "substantial" question of federal law. *Empire Healthchoice Assurance Inc. v. McVeigh*, 547 U.S. 677, 689-90 (2006) (quoting *Franchise Tax Bd. Of Cal. v. Const. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 27-28 (1983)).

A claim is properly dismissed for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) when the court lacks the statutory or constitutional power to adjudicate the claim.[11] "[T]here is a presumption against subject matter jurisdiction that must be rebutted by the party bringing an action to federal court." *Monroe v. Otwell*, 09-0394 (W.D. La. 7/17/09) (J. Robert James), 2009 WL 2146482, *2 (quoting *Coury v. Prot*, 85 F.3d 244, 248 (5th Cir. 1996)). The burden of proof for a Rule 12(b)(1) motion is therefore on the party asserting jurisdiction. *Ramming v. United States*, 281 F.3d 158 (5th Cir. 2001); *Celestine v. TransWood, Inc.*, 467 F. App'x. 317, 318 (5th Cir. 2012). In considering a challenge to subject matter jurisdiction, the district court is "'free to weigh the evidence and resolve factual disputes in order to satisfy itself that it has the power to hear the case.'" *Smith v. Reg'l Transit Auth.*, 756 F.2d 340, 347 (5th Cir. 2014) (quoting *Krim v. pcOrder.com, Inc.*, 402 F.3d 489, 494 (5th Cir. 2005)). "Thus, under Rule 12(b)(1), the district court can resolve disputed issues of fact to the extent necessary to determine jurisdiction." *Smith*, 756 F.2d at 347.

Here, Enable has not asserted any claim under the NGA or raised any other substantial federal issue sufficient to confer federal question jurisdiction. Doc. 1, p. 2-3, ¶ 4. In the absence of federal subject matter jurisdiction, Federal Rule of Civil Procedure 12(b)(1) mandates dismissal of Enable's claims.

**1. The Complaint Does Not State A Claim Under The Natural Gas Act.**

The NGA does not support federal question jurisdiction in this case because (1) the NGA does not regulate natural gas production and (2) it does not create a private right of action for the alleged interference with Enable's rights and obligations relating to the Facility. "The presence

---

[11] The Rule 12(b)(1) jurisdictional challenge should be considered before the other bases of Defendants' Motion to Dismiss. *See Ramming v. United States*, 281 F.3d 158 (5th Cir. 2001) ("When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits.") (citing *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977) (per curium)).

or absence of federal question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Rivet v. Regions Bank of La.*, 522 U.S. 470, 475 (1988).

Significantly, Enable *never* claims that the NGA controls the operation of the Producers' Wells. Indeed, Enable cannot make this claim because **the *regulation of the production of oil and gas is explicitly excluded from the NGA's purview.*** 15 U.S.C. § 717(b) ("The provisions of this chapter…shall not apply to…the production or gathering of natural gas."). Producers' alleged interference with Enable's operations does not somehow bring their production activities within the Act's scope. So the NGA does not apply to Producers' activities.

Further, the NGA "does not create a general private right of action to counter violations of the Act." *Columbia Gas Transmission, LLC v. Singh*, 707 F.3d 583, 587 (6th Cir. 2013) (citing *Williston Basin Interstate Pipeline Co. v. Exclusive Gas Storage Leasehold & Easement in the Cloverly Subterranean Geological Formation*, 524 F.3d 1090, 1100 (9th Cir. 2008); *Clark v. Gulf Oil Corp.*, 570 F.2d 1138, 1148 (3d Cir. 1977)); *see also Pennzoil Co. v. F.E.R.C.*, 645 F.2d 360, 385, n. 49 (5th Cir. 1981) (explaining that the NGA does not provide an implied private cause of action for damages against a producer in favor of local). The NGA instead confers subject matter jurisdiction in only two limited circumstances, neither of which is alleged in the Complaint.[12] *See Columbia Gas Transmission, LLC*, 707 F.3d at 587.

First, the NGA creates a broad right of action for the government by empowering FERC to bring a federal action to enjoin violations. *See* 15 U.S.C. § 717(s)(a). This provision is obviously inapplicable here because FERC did not file this lawsuit. Second, the NGA grants a

[12] Though the NGA vests federal courts with exclusive jurisdiction over violations of the Act, this exclusivity only extends to the discrete set of actions that may be brought under the act itself. *Pan Am. Petroleum Corp. v. Del. Sup. Ct.*, 366 U.S. 656, 664 (1961) (concluding that an ordinary contract claim does not assert a claim under the NGA); *see* 15 U.S.C. § 717(u).

narrow, private right of action for condemnation to a holder of a CPCN. 15 U.S.C. § 717f(h). However, condemnation is allowed only when the CPCN holder is (1) unable to acquire a right of way by contract or reach an agreement regarding compensation with the owner and (2) the owner claims more than $3,000 as compensation for the property taken. Though Enable "demands a judgment requiring Defendants to plug and abandon any and all gas wells," Enable is not seeking a judgment setting compensation for Producers' Wells and, thus, is not asserting a condemnation claim. Doc. 1, p. 14-15, ¶¶ 35-37. To the contrary, Enable actually seeks damages from Producers. *Id*.

Enable's therefore claims do not "arise under" the NGA, so it is not an independent source of federal question jurisdiction.

**2. Enable's Claims Do Not Raise A Substantial Federal Question.**

Further, Enable's claims do not "necessarily depend on resolution of a substantial question of federal law" sufficient to invoke federal question jurisdiction. *Duane Morris LLP*, 538 F.2d at 337-38 (citing *Franchise Tax Bd.* 463 U.S. at 27-28; *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 809 (1988)). To determine whether federal question jurisdiction exists over claims that are not created by a federal statute, courts in the Fifth Circuit consider the following: (1) whether resolving a federal issue is necessary to resolution of the state-law claim; (2) whether the federal issue is actually disputed; (3) whether the federal issue is substantial; and (4) whether federal jurisdiction will disturb the balance of federal and state judicial responsibilities. *Duane Morris LLP*, 538 F.2d at 337-38. Here, Enable's claims simply do not meet these requirements, and its unsupported allegation that its claims "affect substantial rights and obligations arising under Federal Law" is insufficient to raise a substantial federal issue.

Enable relies on the NGA and asserts that its claims "affect substantial rights and obligations arising under Federal Law" because its "rights in and to [the Facility]… and the

natural gas therein are derived exclusively form Federal Law pursuant to the Natural Gas Act." Doc. 1, p. 2-3, ¶ 4. However, Enable ignores the fact that Producers' operations are not governed by the NGA. The repeated references in the Complaint to the rights and obligations imposed by FERC Certificate are nothing more than red herrings.[13] The sole basis of Enable's claim is the *production* of gas.

The production of gas is regulated by state law. In Louisiana, the production of natural gas is regulated by Title 30.[14] *See* La. Rev. Stat. § 30:1, *et seq*. The Producers activities thus implicate only issues of state regulatory law under Title 30 and do not require resolution of *any* federal issue. And because Producers' activities are not regulated by FERC, their activities do not give rise to any obligations directly or indirectly governed by the NGA. *See Columbia Gas Transmission, LLC*, 707 F.3d at 588 ("[A]t no point does [the plaintiff] allege that the [NGA] imposed any duty on the [defendants]. If the [defendants] do not have a statutory duty, they cannot have violated the [NGA]."). Thus, Enable's claims do not "affect substantial rights and obligations arising under Federal Law" and do not implicate this Court's federal question jurisdiction.

Granting Enable relief in this lawsuit would create a federal forum for private parties to challenge the Louisiana Office of Conservation's regulation of production activities and would undoubtedly infringe on the balance of federal and state judicial responsibilities. *See id.* (concluding that permitting federal jurisdiction over a claim for the alleged interference with an easement would disrupt the congressionally approved balance of federal and state judicial responsibilities by increasing the scope and volume of cases filed in federal courts); *F.P.C. v.*

[13] Enable actually cites state law—the Louisiana Mineral Code—as the source of the "rights and duties" that it claims Producers owed and allegedly breached. Doc. 1, p. 12, ¶¶ 27-28. As discussed in Section II. C. below, under the facts alleged in the Complaint, Enable has not stated a plausible claim for relief under the Louisiana Mineral Code.

[14] Both Producers' and Enable's activities are governed by Title 30. La. Rev. Stat. § 31:1, *et. seq.*

*Hope Natural Gas Co*., 320 U.S. 591, 613 (1944) (explaining that the NGA "does not intrude on the domain traditionally reserved for control by state commissions; and the Federal Power Commission was given no authority over the production or gathering of natural gas."). Enable's lawsuit, "when stripped to its essentials, seeks enforcement" of state regulated *production* activities. *Cf. Superior Oil Co. v. Pioneer Corp*., 706 F.2d 603, 606 (5th Cir. 1983). Thus, allowing Enable the relief sought would disturb this careful federal and state balance.

The Fifth Circuit has explained that "[t]he nature of the cause of action asserted determines jurisdiction." *Cox v. Int'l Union of Operating Eng'r*, 672 F.2d 421, 422-23 (5th Cir. 1982). Enable's claims are a matter of state regulatory law governed by Title 30 and the rules and regulations of the Louisiana Office of Conservation. These issues do not require resolution of any federal issue, much less one that is either disputed or substantial. *See Oliver v. Trunkline Gas Co.*, 796 F.2d 86 (5th Cir. 1986); *see also Henry J. Ellender Heirs, LLC v. Exxon Mobil Corp., et al*., 14-711, 42 F.Supp.3d 812 (E.D. La. 8/26/14). And the mere fact that Enable's Facility is regulated by FERC cannot support federal subject matter jurisdiction in this case.

**3. Enable Failed To Exhaust Its Administrative Remedies.**

Even if the Complaint states a claim that properly invokes this Court's subject matter jurisdiction, Enable cannot obtain the declaratory relief it seeks in this lawsuit because it has not exhausted its administrative remedies available to modify the Series 206 Orders and FERC Certificate.

The allegation that stored gas has and is escaping the storage reservoir directly contradicts the Louisiana Commissioner of Conservation's finding that the storage reservoir is a closed reservoir. Doc. 1-2, p. 4. Section 12 of Title 30 mandates the exhaustion of the available administrative remedies before relief from an order can be sought from the courts. *See* La. Rev.

Stat. § 30:12.[15] Therefore, before judicial relief is available, Enable must first seek to have the Commissioner amend the Series 206 Orders defining the boundaries of the Facility and finding the reservoir to be a "closed reservoir." *S. Natural Gas Co. v. Mound Co.*, 229 F. Supp. 422 (E.D. La 1964) (mineral lessees failed to exhaust administrative remedies before the Commissioner of Conservation prior to filing suit for an accounting due to the defendants' alleged production of oil from a sand which the Commissioner determined was sealed off); *O'Meara v. Union Oil Co. of Cal.*, 33 So. 2d 506 (La. 1947) ("It is apparent that the Legislature has delegated to the commissioner of conservation, the authority to find the facts upon which the law is to be applied. The various powers conferred upon the commissioner in this act support this conclusion and the provision in [current La. Rev. Stat. § 30:12], requiring the exhaustion of administrative remedy before relief can be sought from the courts, renders the question beyond dispute."). Unless and until Enable does so, no court will have subject matter jurisdiction over Enable's claims.

Similarly, Congress has delegated the power to FERC to make the scientific and factual determinations relevant to the regulation of Enable's operations and facilities. *See* 15 U.S.C. § 717, *et seq.*; *see also Meliezer v. Resolution Trust Co.*, 952 F.2d 879, 882 (5th Cir. 1992) (explaining that Congress's power to vest an agency with exclusive original jurisdiction indicates that a statutory exhaustion requirement is jurisdictional). And Enable has also failed to exhaust the administrative procedure mandated by the NGA because it has not sought or obtained authorization from FERC to expand the boundaries of the Facility to encompass the locations of Producers' Wells. *See* 15 U.S.C. § 717f and § 717r.

[15] Section 12 of Title 30 states that a "person who is aggrieved by any law of this state with respect to conservation of oil or gas, or both, or by a provision of this Chapter, or by a rule, regulation, or order made by the assistant secretary of the office of conservation hereunder…*and who has exhausted his administrative remedy*, may obtain court review by a suit for injunction or judicial review against the assistant secretary as defendant." La. Rev. Stat. § 30:12. (emphasis added).

Enable admits that Producers' Wells are located outside of the "defined limits of the" Facility. Doc. 1, p. 6, ¶ 16. By seeking to prohibit gas production from the Producers' Wells, Enable is essentially seeking to expand the boundaries of the Facility to include Producers' Wells. But the NGA explicitly requires FERC to first approve such an expansion.[16] *See* 15 U.S.C. § 717f. Enable has never sought such authorization from FERC and is not permitted to use this declaratory action to evade the mandates of the NGA.

Because Enable has failed to exhaust the administrative remedies under both the NGA and Title 30, it has no right to judicial relief and cannot invoke this Court's jurisdiction.

**4. This Court May Decline Jurisdiction Under The Declaratory Judgment Act.**

Enable seeks declaratory relief pursuant to the Federal Declaratory Judgment Act which permits "any court of the United States, upon the filing of an appropriate pleading, [to] declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. But the Declaratory Judgment Act does not confer subject matter jurisdiction on a federal court where jurisdiction does not otherwise exist. *Port Drum Co. v. Umphrey*, 852 F.2d 148, 149 (5th Cir. 1988); *see also Lawson v. Callahan*, 111 F.3d 403, 405 (5th Cir. 1997). And even where subject matter jurisdiction otherwise exists, the Declaratory Judgments Act confers "unique and substantial discretion" upon federal courts, including discretion whether to entertain, stay, or dismiss the action. *Wilton v. Seven Falls Co*., 515 U.S. 277, 286 (1995).

Given the broad discretion granted by the Declaratory Judgment Act, this Court is under no compulsion to exercise its jurisdiction in this suit, even if an independent basis for federal jurisdiction exists. *Brillhart v. Excess Ins. Co*., 316 U.S. 491, 495 (1942). "[T]he declaratory

[16] Even if FERC denied Enable's application to expand the boundaries of the Facility, which Enable has not brought and does not allege it has brought, Enable would still not be entitled to seek relief from this Court because the NGA requires that any party "aggrieved by an order issued by the Commission" first apply for rehearing before seeking judicial review. 15 U.S.C. § 717r(a)-(b).

judgment procedure should not be used to preempt and prejudge issues that are committed for initial decision to an administrative body or special tribunal any more than it should be used as a substitute for statutory methods of review." *Webster v. Askew*, 371 F.Supp. 733 (N.D. Fl., Tallahassee Div. 5/24/73) (citing *Pub. Service Comm'n v. Wycoff*, 344 U.S. 237, 246 (1952)). When agency orders involve complex scientific or technical questions, federal courts are particularly reluctant to interfere with agencies' reasoned judgments. Enable should not be permitted to use this federal forum to circumvent the authority of the state and regulatory agencies with relevant technical and scientific knowledge to expand or determine the geological boundaries of subsurface hydrocarbon reservoirs and rock formations.

FERC and the Office of Conservation are undoubtedly in the best position to modify the orders and regulations governing the Enable's rights with respect to the Facility and Producers' oil and gas production activities. Therefore, even if the Complaint asserts a federal claim, the Court has broad discretion under the Declaratory Judgment Act to decline to exercise jurisdiction in this case and dismiss the Enable's claims under Rule 12(b)(1).[17]

**B. <u>Rule 12(b)(6) Requires Dismissal Of Enable's Claims.</u>**

In addition to the jurisdictional bases for dismissal, Rule 12(b)(6) provides another basis for dismissal. Specifically, the Complaint fails to state a claim for which relief can be granted because Enable's claims are an impermissible collateral attack on FERC Certificate and Louisiana Office of Conservation Series 206 Orders. The Complaint also fails to state a viable cause of action under the Louisiana Mineral Code.

An action should be dismissed under Rule 12(b)(6) "for failure to state a claim upon which relief can be granted." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"

---

[17] As a consequence of the foregoing, this Court does not have supplemental jurisdiction to consider the state law claims in this case. *Arena v. Graybar Elec. Co., Inc.*, 669 F.3d 214, 215 (5th Cir. 2012).

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Johnson v. Shelby, Miss.*, 135 S.Ct. 346, 347, 2014 WL 5798626 (2014) ("A plaintiff….must plead facts sufficient to show that her claim has substantive plausibility."). "[I]f as a matter of law, it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations, a claim must be dismissed, without regard to whether it is based on an outlandish legal theory or on a close but ultimately unavailing one." *Id.* (internal citation and quotation marks omitted).

**1. Enable's Claims Are An Impermissible Collateral Attack On The FERC Certificate And The Series 206 Orders.**

As stated, Enable admits that Producers' Wells are located outside of the "defined limits" of the Facility but essentially seeks to expand the boundaries of the Facility established by FERC. Doc. 1, p. 6, ¶ 16. The Series 206 Orders likewise establish the boundaries of the West Unionville Field Reservoir and establish that it is a closed reservoir that does not communicate with other reservoirs in other fields. As discussed in Section II.A.4. above, Enable has not sought or obtained modification of the Certificate or Series 206 Orders and does not allege that FERC has authorized the expansion of the Facility as required by the NGA. Enable's claims are in direct contradiction to these findings and limitations, and as such, its claims are an impermissible collateral attack on both the findings of FERC and the Commissioner of Conservation.

As this Court has previously held, the law prohibits such a collateral attack of federal and state orders authorizing gas storage facilities. *See Cadeville Gas Storage, LLC v. 15.35 Acres of Land in Ouachita Parish, La., et al.*, 12-2768, 2013 WL 6816392, slip op., *10 (W.D. La. 12/20/13) (J. James, Robert) (excluding evidence and testimony collaterally attacking FERC and Louisiana Commissioner of Conservation's findings that a particular zone of a reservoir was fully depleted of commercially recoverable natural gas and condensate). The Ninth Circuit's

opinion in *Williston Basin v. Interstate Pipeline Company* is instructive here because it demonstrates that the rights and authority granted by the Certificate cannot exceed the boundaries of the facility without additional authorization from FERC to expand the Facility. *Williston Basin*, 524 F.3d 1090 (9th Cir. 2008); § 717f(c)(1)(A).

Like Enable, the plaintiff in *Williston* alleged that the defendants were producing its stored gas from wells located outside of the boundaries of its facility.[18] *Williston Basin*, 524 F.3d at 1090. Plaintiff in *Williston* claimed that its CPCN entitled it to enjoin the defendants' production activities and to condemn the defendants' wells. *Id.* at 1093. The Ninth Circuit explained that the plaintiff was actually asking the court to expand its facilities. *Id.* at 1096-97. But to do so required further authorization under the NGA. *Id.* at 1099-1100. Because FERC had not authorized the expansion of the plaintiff's facility, the plaintiff had no authority to condemn the defendants' property located outside of the boundaries established by FERC. *Id.* Thus, the plaintiff in *Williston* "failed to state a claim to relief that is plausible on its face." *Id.* at 1100.

The same result is required here. Like the plaintiff in *Williston*, Enable is essentially asking this Court for the same remedy provided for by a condemnation claim but without paying for Producers' property. Regardless of how Enable characterizes its claim, the Producers' Wells are located outside of the boundaries of the Facility, and FERC has not authorized the expansion of Enable's Facility. Enable's claims thus are an impermissible collateral attack on the Certificate issued by FERC, which should be dismissed pursuant to Rule 12(b)(6).

The claims are also collateral attack on the Series 206 Orders establishing that Enable's storage reservoir is a "closed reservoir which is effectively separated from the Vaughn Sand in the East Unionville Field." Doc. 1-2, p. 4. But like federal law, Louisiana law prohibits such

[18] In *Williston*, certain wells were located within the geographic boundaries of the facility but were producing from a deeper geological horizon; other wells were outside both the geological and geographical limits of the plaintiff's facility. *Williston Basin*, 524 F.3d at 1092.

collateral attacks on orders of the Louisiana Commissioner of Conservation and the facts established therein. *S. Natural Gas Co. v. Poland*, 406 So. 2d 657, 660 (La. App. 2d Cir. 1981) ("When final, the Commissioner's order shall be taken as prima facie valid and may not be collaterally attacked.") (citing La. Rev. Stat. § 30:12; *Interstate Oil Pipe Line Co. v. Guilbeau*, 217 La. 160, 46 So.2d 113 (La. 1950); *Brown v. Alice-Sydney Oil Co.*, 343 So.2d 745 (La. App. 2d Cir. 1977)). Instead, any question as to the validity or correctness of the determinations set forth in the Commissioner's orders must be raised in a direct proceeding either before the Commissioner or against the Commissioner in a judicial proceeding at his domicile. *See* La. Rev. Stat. § 30:12(A)(1).

Here, Enable has not sought modification of the Series 206 Orders and has not named the Commissioner as a defendant in a suit filed in the Commissioner's domicile in East Baton Rouge Parish. Thus, this suit is a collateral attack on the Commissioner's Series 206 Orders, and the Enable has failed to state a viable cause of action. *See Trahan v. Superior Oil Co.*, 700 F.2d 1004, 1015 (5th Cir. 1983). Accordingly, this suit must be dismissed.

**2. Enable Has No Claim For Violation Of The Correlative Rights Doctrine.**

Enable has also failed to state a viable claim under the Louisiana Mineral Code. Enable alleges it shares rights in a "common reservoir" with Producers and that they, therefore, have "correlative rights and duties to one another in the development and use of the mineral rights of each owner" under the Louisiana Mineral Code.[19] Doc. 1, p. 12, ¶ 27. To state a claim for violation of the correlative rights doctrine, a plaintiff must allege that (1) both parties have rights in a common reservoir, (2) such reservoir is the source of the minerals being produced, and (3)

---

[19] Enable misrepresents the fundamental nature of its own basic rights under Louisiana law. Once gas (or other hydrocarbons) is reduced to possession, it is separately owned personal property—not a right in an immovable. *See* La. Rev. Stat. § 31:6-7. For this reason alone, the Louisiana Mineral Code articles governing rights in common reservoirs cannot apply here.

the minerals are being produced to intentionally or negligently deprive another owner "of enjoying his right."[20]

But here, Producers are not alleged to have or share any rights with respect to the stored gas, the storage reservoir, or to the reservoir(s) from which the stored gas was initially produced. And, Enable does not allege to have any rights in Producers' native gas or the reservoir that is the source of the native gas. Further, Enable has not even alleged that Producers were either negligent or acted with the intent to deprive Enable of its rights. *See* La. Rev. Stat. § 31:10. Under the alleged facts, the correlative rights doctrine cannot apply.

Consequently, Enable has failed to state a claim for which relief may be granted under the Louisiana Mineral Code, and its claims should therefore be dismissed under Rule 12(b)(6).

## III. CONCLUSION

Based on the foregoing, Enable's claims do not invoke this Court's subject matter jurisdiction and do not state a cause of action on which relief may be granted. Therefore, both Federal Rule of Civil Procedure 12(b)(1) and Rule 12(b)(6) require dismissal of this lawsuit. Accordingly, Defendants Linn Energy Holdings, LLC, Devon Energy Production Company, L.P., Devon Gas Operating, Inc., and Devon Gas Services, L.P. pray that this Court dismiss all claims at Enable Mississippi River Transmission, LLC's cost.

---

[20] "Landowners and others with rights in a common reservoir or deposit of minerals have correlative rights and duties with respect to one another in the development and production of the common source of minerals." La. Rev. Stat. § 31:9. "A person with rights in a common reservoir or deposit of minerals may not make works, operate, or otherwise use his rights so as to deprive another intentionally or negligently of the liberty of enjoying his rights, or that may intentionally or negligently cause damage to him." La. Rev. Stat. § 31:10.

s/ Loulan J. Pitre, Jr.
Loulan J. Pitre, Jr. (Bar No. 17749) (T.A.)
Aimee Williams Hebert (Bar No. 25935)
Kelly Ransom (Bar No. 31926)
Victor Jones (Bar No. 34937)
**KELLY HART & PITRE**
400 Poydras St., Suite 1812
New Orleans, Louisiana 70130
Telephone: (504) 522-1812
Fax: (504) 522-1813
loulan.pitre@kellyhart.com
aimee.hebert@kellyhart.com
kelly.ransom@kellyhart.com
victor.jones@kellyhart.com

***Attorneys for Linn Energy Holdings, LLC, Devon Energy Production Company, L.P., Devon Gas Operating, Inc., and Devon Gas Services, L.P.***

## CERTIFICATE OF SERVICE

Undersigned counsel hereby certifies that the foregoing was electronically filed with the Clerk of Court using the CM/ECF system on this 6th day of July, 2015, and that electronic notice of this filing will be sent to all counsel of record.

s/ Loulan J. Pitre, Jr.