**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**MONROE DIVISION**

| | |
|---|---|
| **ENABLE MISSISSIPPI RIVER TRANSMISSION, LLC** | **CIVIL ACTION NO. 3:15-cv-01625** |
| **VERSUS** | **JUDGE FOOTE** |
| **LINN ENERGY HOLDINGS, LLC *ET AL*** | **MAGISTRATE JUDGE HAYES** |

---

# MEMORANDUM IN SUPPORT OF ENABLE MISSISSIPPI RIVER TRANSMISSION, LLC'S OPPOSITION TO MOTION TO DISMISS

---

Respectfully submitted,

BRADLEY MURCHISON KELLY & SHEA LLC

David R. Taggart
Louisiana Bar Roll No. 12626

Kimberly C. Delk
Louisiana Bar Roll No. 28018

401 Edwards Street, Suite 1000
Reception Ninth Floor
Shreveport, Louisiana 71101
Telephone: (318) 227-1131
Facsimile: (318) 227-1141

- Attorneys for Enable Mississippi River Transmission, LLC

# TABLE OF CONTENTS

**Page**

Table of Authorities ........ ii

I. Statement of the Case ........ 1

II. Law and Argument ........ 4

A. Dismissal Pursuant to 12(b)(1) Would be Improper ........ 4

1. Enable's Claims Arise under the Natural Gas Act and Thus the Federal Courts have Exclusive Jurisdiction ........ 5

2. Federal Subject Matter Jurisdiction is Also Proper Because There are Substantial Federal Rights at Issue ........ 12

3. Enable is Not Required to Exhaust Its Administrative Remedies With FERC or The Louisiana Commissioner of Conservation ........ 15

4. This Court May Exercise its Jurisdiction and Issue a Declaratory Judgment Under the Declaratory Judgment Act ........ 17

B. Dismissal Pursuant to Rule 12(b)(6) Would Be Improper ........ 19

1. Enable's Claims are not a Collateral Attack on its Own FERC Certificate or Louisiana Commissioner of Conservation 206 Orders ........ 20

2. Enable Has Properly Stated a Claim for Violation of the Correlative Rights Doctrine under the Louisiana Mineral Code ........ 22

III. Conclusion ........ 25

Certificate of Service ........ 27

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Amoco Prod. Co. v. Thompson*,
566 So. 2d 138 (La. App. 1st Cir. 1990)....................23, 25

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................19

*Bd. of Comm'rs of Se. La. Flood Protection Auth.-E. v. Tenn. Gas Pipeline Co.*,
29 F. Supp. 3d 808 (E.D. La. 2014), *appeal docketed*,
No. 15-30162 (5th Cir. Feb. 24, 2015) ....................12, 13

*Bell v. Hood*,
327 U.S. 678 (1946)....................13, 14

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)....................19, 20

*Benton v. United States*,
960 F.2d 19 (5th Cir. 1992) ....................4, 5

*Cal. ex rel. Lockyer v. Dynegy, Inc.*,
375 F.3d 831 (9th Cir. 2004) ....................7, 9

*Causey v. Sewell Cadillac-Chevrolet, Inc.*,
394 F.3d 285 (5th Cir. 2004) ....................19

*Clark v. Amoco Prod. Co.*,
794 F.2d 967 (5th Cir. 1986) ....................19, 20

*Clark v. Gulf Oil Corp.*,
570 F.2d 1138 (3d Cir. 1977)....................9, 14

*Columbia Gas Transmission LLC v. Singh*,
707 F.3d 583 (6th Cir. 2013) ....................9

*Conley v. Gibson*,
355 U.S. 41 (1957)....................4

*Corbello v. Iowa Prod.*,
02-0826 (La. 2/25/03), 850 So. 2d 686....................16

*Daigle v. Opelousas Health Care, Inc.*,
774 F.2d 1344 (5th Cir. 1985) ....................................................................................14

*Eagle Lake Estates, L.L.C. v. Cabot Oil & Gas Corp.*,
330 F. Supp. 2d 778 (E.D. La. 2004).................................................................20, 21

*EOG Resources, Inc. v. Chesapeake Energy Corp.*,
605 F.3d 260 (5th Cir. 2010) ........................................................................20, 21

*Frank C. Minvielle, LLC v. IMC Global Operations, Inc.*,
380 F. Supp. 2d 755 (W.D. La. 2004)...........................................................................17

*Grable & Sons Metal Prods. v. Darue Eng'g & Mfg.*,
545 U.S. 308 (2005).........................................................................................................12

*Gulf Oil Corp v. Tenneco*,
608 F.Supp 1493 (E.D. La. 1985)..................................................................................17

*Gully v. First Nat'l Bank*,
299 U.S. 109 (1936)...................................................................................................12, 13

*Hawkins v. Nat'l Assoc. of Securities Dealers Inc.*,
149 F.3d 330 (5th Cir. 1998) ........................................................................................6, 8

*Magnolia Coal Terminal v. Phillips Oil Co.*,
576 So. 2d 475 (La. 1991) ...............................................................................................16

*Middle S. Energy, Inc. v. City of New Orleans*,
800 F.2d 488 (5th Cir. 1986) ..............................................................................................5

*Mills v. Davis Oil Co.*,
11 F.3d 1298 (5th Cir. 1994) ...........................................................................................17

*Miss. Power & Light Co. v. United Gas Pipe Line Co.*,
532 F.2d 412 (5th Cir. 1976) .....................................................................................16, 17

*Mobil Exploration & Producing U.S. Inc. v. Certain Underwriters Subscribing to Cover Note 95-3317(A)*, 01-2219 (La. App. 1 Cir. 11/20/02), 837 So. 2d 11 ...............23

*Montez v. Dep't of Navy*,
392 F.3d 147 (5th Cir. 2004) ...........................................................................................14

*Neitzke v. Williams*,
490 U.S. 319 (1989)...........................................................................................................20

*Pacificorp v. Nw. Pipeline GP*,
No. CV-99-PK, 2010 WL 3199950 (D. Or. June 23, 2010) ................................7, 8, 10, 21

*Pan Am. Petroleum Corp. v. Superior Court of Del. In & For New Castle Cnty.*,
366 U.S. 656 (1961) ..........................................................................................9

*Paterson v. Weinberger*,
644 F.2d 521 (5th Cir. 1981) ......................................................................4, 5, 12

*Pennzoil Co. v. FERC*,
645 F.2d 360 (5th Cir. 1981) ..........................................................................9

*Radar Solutions, Ltd. v. U.S. Fed. Commc'ns Comm'n*,
628 F. Supp. 2d 714 (W.D. Tex. 2009), *aff'd sub nom.*
*Radar Solutions, Ltd. v. U.S. F.C.C.*, 368 F. App'x 480 (5th Cir. 2010)............................4

*Safe Air for Everyone v. Meyer*,
373 F.3d 1035 (9th Cir. 2004) ..........................................................................14

*Santerre v. Agip Petroleum Co.*,
45 F. Supp. 2d 558 (S.D. Tex. 1999) ..................................................................14

*Schneidewind v. ANR Pipeline Co.*,
485 U.S. 293 (1988) ..........................................................................................5

*Simoneaux v. Jolen Operating Co.*,
No. Civ.A.04-2467, 2004 WL 2988506 (E.D. La. Dec. 15, 2004)..............................16, 17

*Smith v. Reg'l Transit Auth.*,
756 F.3d 340 (5th Cir. 2014) ..........................................................................5

*Sparta Surgical Corp. v Nat'l Ass'n of Securities Dealers, Inc.*,
159 F.3d 1209 (9th Cir. 1998) ......................................................................7, 8, 21

*Steel Co. v. Citizens for a Better Env't*,
523 U.S. 83 (1998) ..........................................................................................13

*Trahan v. Superior Oil Co.*,
700 F.2d 1004 (5th Cir. 1983) ..........................................................................20

*Travelers Ins. Co. v. La. Farm Bureau Fed'n, Inc.*,
996 F.2d 774 (5th Cir. 1993) ..........................................................................18

*Wagner & Brown v. ANR Pipeline Co.*,
837 F.2d 199 (5th Cir. 1988) ..........................................................................15

*Williamson v. Tucker*,
645 F.2d 404 (5th Cir. 1981) ....................................................................................14

*Williston Basin Interstate Pipeline Co. v. An Exclusive Gas Storage Leasehold & Easement in the Cloverly Subterranean Geological Formation*,
524 F.3d 1090 (9th Cir. 2008) ...........................................................................13, 20, 21

*Wilton v. Seven Falls Co.*,
515 U.S. 277 (1995)...........................................................................................................18

**<u>Statutes</u>**

15 U.S.C. § 78aa ................................................................................................................6, 7

15 U.S.C. § 717 *et seq*..........................................................................................................1, 25

15 U.S.C. § 717(a) ....................................................................................................................8

15 U.S.C. § 717(b) ..................................................................................................................10

15 U.S.C. § 717f(c)(1)(A)........................................................................................................11

15 U.S.C. § 717f(h)..................................................................................................................21

15 U.S.C. § 717r(a)..................................................................................................................16

15 U.S.C. § 717u..................................................................................6, 7, 8, 9, 10, 12, 15, 16

28 U.S.C. § 1331.........................................................................................................2, 12, 25

28 U.S.C. § 1337...................................................................................................................2, 25

28 U.S.C. § 2201..................................................................................................2, 17, 18, 25

Fed. R. Civ. P. 8 ...............................................................................................................19, 20

Fed. R. Civ. P. 8(a)(2).............................................................................................................19

Fed. R. Civ. P. 12(b)(1)......................................................................................................4, 5, 19

Fed. R. Civ. P. 12(b)(6).......................................................................................................19, 20

Fed. R. Civ. P. 71.1 ................................................................................................................21

La. Rev. Stat. § 31:9.................................................................................................................22

La. Rev. Stat. § 31:10 ........ 22, 23

La. Rev. Stat. § 31:11 ........ 22

**Other**

*CenterPoint Energy-Mississippi River Transmission Corp.*, 135 FERC ¶ 61,049 (2011) ........ 2

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**MONROE DIVISION**

| | |
|---|---|
| **ENABLE MISSISSIPPI RIVER TRANSMISSION, LLC** | **CIVIL ACTION NO. 3:15-cv-01625** |
| **VERSUS** | **JUDGE FOOTE** |
| **LINN ENERGY HOLDINGS, LLC *ET AL*** | **MAGISTRATE JUDGE HAYES** |

**MEMORANDUM IN SUPPORT OF**
**ENABLE MISSISSIPPI RIVER TRANSMISSION, LLC'S**
**OPPOSITION TO MOTION TO DISMISS**

ENABLE MISSISSIPPI RIVER TRANSMISSION, LLC, successor to Mississippi River Transmission Corporation ("Enable"), respectfully opposes the Motion to Dismiss filed by Defendants, Linn Energy Holdings, LLC, Devon Energy Production Company, LP, Devon Gas Operating, Inc., and Devon Gas Services, LP (collectively identified as "Linn" or "Defendants"), for the reasons set forth below and prays that Defendants' Motion to Dismiss ("Motion to Dismiss") be denied with costs assessed to Defendants.

## I. Statement of the Case

Enable operates a federally certificated underground natural gas storage field in Lincoln Parish, Louisiana, known as the West Unionville Storage Facility. Enable's West Unionville Storage Facility is located in the depleted subsurface geologic zone or reservoir known as the "Ruston Vaughn" or "Vaughn" formation pursuant to the initial designation of the Louisiana Commissioner of Conservation. *See* Doc. 1, Exhibit 2. More importantly for the instances of the current motion is that Enable's gas storage facility is regulated by the Federal Energy Regulatory Commission ("FERC") pursuant to the Natural Gas Act, 15 U.S.C. § 717 *et seq*. (the "NGA"). Accordingly, FERC's predecessor, the Federal Power Commission, granted Enable federally

protected rights under its 1968 Certificate of Public Convenience and Necessity ("CPCN" or "FERC Certificate") to operate the West Unionville Storage Facility, which includes injecting, storing, and withdrawing natural gas located within Enable's federally certificated facility. This CPCN vests exclusive authority and regulation of the storage facility and the storage gas that is injected into and withdrawn from it in FERC and the NGA. Defendants do not have a FERC certificate to withdraw natural gas from the West Unionville Storage Facility, but have been withdrawing and selling Enable's federally certificated storage gas for many years and continue to do so. They are doing this without notice, approval, or agreement from Enable and without notice, authority, or certification from either FERC or the Louisiana Commissioner of Conservation, and in violation of federal law that requires a certificate from FERC prior to making such withdrawals.

Enable filed this action on May 4, 2015, to enforce its federally mandated rights in and to the natural gas stored in the West Unionville Storage Facility pursuant to Enable's CPCN issued by FERC's predecessor in 1968 in accordance with the NGA. This Court has jurisdiction over this suit pursuant to 28 U.S.C. §§ 1331 and 1337 because Enable's claims involve the unauthorized withdrawal of this natural storage gas from Enable's underground storage facility, owned and operated by Enable pursuant to its FERC-jurisdictional storage field, which is governed by FERC in accordance with its CPCN and the provisions of the NGA. The Enable-owned natural gas in the storage facility is an asset dedicated to providing transportation and storage services in interstate commerce to third parties. *See, e.g.*, *CenterPoint Energy-Mississippi River Transmission Corp.*, 135 FERC ¶ 61,049, at 15-18 (2011). Determination of this action will rest upon the interpretation of the scope and applicability of the NGA. Enable asks for declaratory relief pursuant to 28 U.S.C. § 2201, recognizing and affirming that the storage gas

owned by Enable and injected into the West Unionville Storage Facility was and is at all times the sole and exclusive property of Enable pursuant to its FERC Certificate. Enable also seeks a judgment declaring that Defendants' operations in the withdrawal of Enable's storage gas and the subsequent re-sale thereof by Defendants into interstate commerce have deprived Enable of its reciprocal rights in the Ruston Vaughn reservoir under the correlative rights doctrine, infringed Enable's enjoyment of rights in and to the storage gas, and affected and limited Enable's ability to provide the federally authorized natural gas services which Enable is exclusively licensed to provide under its FERC Certificate. Enable seeks an accounting from Defendants of the total volume of gas produced by Defendants' wells because Enable believes, and believes the evidence will show, that the natural gas withdrawn by Defendants was in fact Enable's federally certificated storage gas.

Contrary to Defendant's allegations, Enable does not seek to "modify or overturn" any of the actions or orders of FERC, nor does it seek to expand its FERC Certificate in this action.[1] Enable simply seeks a declaratory judgment that Defendants have withdrawn and continue to withdraw Enable's federally certificated storage gas and to enforce Enable's federally created and protected rights in the federally certificated storage facility and storage gas therein under its existing FERC Certificate, issued pursuant to the NGA, and other federal law.

---

[1] Similarly, Enable is not seeking in this lawsuit to "overturn or modify" any of the Louisiana Commissioner of Conservation Orders as alleged by Defendants. In fact, once Enable obtains the declaratory judgment, it envisions subsequent proceedings at the Louisiana Office of Conservation to obtain ancillary relief enforcing the decision of this Court through such orders or means as the Louisiana Commissioner of Conservation may deem appropriate. However, that action is dependent upon the predicate determination by this Court that the gas withdrawn by Defendants is in fact Enable's federally certificated storage gas.

## II. Law and Argument

### A. Dismissal Pursuant to Rule 12(b)(1) Would Be Improper

Defendants misconstrue this Court's standard of review. There is no "presumption against subject matter jurisdiction" as Defendants contend. Doc. 5-1, p. 13. Rather, a claim may not be dismissed for lack of subject-matter jurisdiction under Rule 12(b)(1) unless "it appears certain that the plaintiff cannot prove any set of facts in support of [his] claim that would entitle [him] to relief." *Benton v. United States*, 960 F.2d 19, 21 (5th Cir. 1992), citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Here, Enable has alleged, and will prove, facts that clearly demonstrate that it is entitled to relief. Defendants' attempt to contort the governing standard of review signals the weakness of their motion, especially when viewed at this stage of the proceeding under the correct standard of review.

Rule 12(b)(1) challenges to subject matter jurisdiction come in two forms: "facial" attacks and "factual" attacks. *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981). A facial attack consists of a Rule 12(b)(1) motion unaccompanied by supporting evidence that challenges the court's jurisdiction based solely on the pleadings. *Id.* A factual attack challenges the existence of subject matter jurisdiction in fact—irrespective of the pleadings—and matters outside the pleadings, such as testimony and affidavits, are considered. *Id.*

The two different types of challenges come with differing standards of review. When the defendant makes a facial attack by the mere filing of a Rule 12(b)(1) motion, the trial court looks to the sufficiency of the plaintiff's allegations, which are presumed to be true. *Radar Solutions, Ltd. v. U.S. Fed. Commc'ns Comm'n*, 628 F. Supp. 2d 714, 723 (W.D. Tex. 2009), *aff'd sub nom. Radar Solutions, Ltd. v. U.S. F.C.C.*, 368 F. App'x 480 (5th Cir. 2010). When the defendant makes a factual attack by submitting affidavits, testimony, and other evidence

challenging the court's jurisdiction, the plaintiff must provide facts through some evidentiary method in support of the court's jurisdiction and the court is free to weigh the evidence. *Middle S. Energy, Inc. v. City of New Orleans*, 800 F.2d 488, 490 (5th Cir. 1986); *see also Paterson*, 644 F.2d at 523.

Defendants attempt to gain the benefits of the "factual attack" standard of review despite making a "facial attack" on the sufficiency of Enable's Complaint. Defendants contend that the Court is "free to weigh the evidence and resolve factual disputes in order to satisfy itself that it has the power to hear the case." Doc. 5-1, p. 13, citing to *Smith v. Reg'l Transit Auth.*, 756 F.3d 340, 347 (5th Cir. 2014). In this case, Defendants have not supported their Rule 12(b)(1) motion with evidence; Defendants have submitted no affidavits or outside exhibits in support of their motion and have relied upon nothing beyond the Complaint and the documents attached thereto. Thus, Defendants' motion is unquestionably a "facial attack." Accordingly, the Court must accept Enable's allegations as true and may only dismiss this action if it is certain that Enable can prove no set of facts in support of its claim that would entitle it to relief. *See Benton*, 960 F.2d at 21. Enable plainly exceeds this low threshold for finding that jurisdiction resides with this Court.

### 1. Enable's Claims Arise under the Natural Gas Act and Thus the Federal Courts have Exclusive Jurisdiction

Companies engaged in natural gas transportation[2] and sale in interstate commerce are subject to regulation by FERC under the provisions of the NGA. These companies, such as Enable, must acquire a CPCN from FERC in order to operate. The CPCN grants certain federal rights to Enable and vests exclusive authority and jurisdiction over the storage facility and the storage gas in FERC pursuant to the NGA. The CPCN requires that Enable "conform to the

[2] "Transportation includes storage, exchange, backhaul, displacement, or other methods of transportation." *Schneidewind v. ANR Pipeline Co.*, 485 U.S. 293, 295 n. 1 (1988).

provisions of the Natural Gas Act and the requirements, rules and regulations of the Commission thereunder" and that "the rights granted thereunder are conditioned upon [Enable's] compliance with all applicable Commission Regulations under the Natural Gas Act." Doc. 1-2, p. 2 (Enable's CPCN, Finding (3) and Order (B)). Accordingly, under the NGA and Enable's CPCN, Enable has substantial, federally enforceable rights in both its storage facility and the storage gas. Moreover, Defendants' withdrawals of natural gas from Enable's FERC certificated storage facility violates federal law, which requires such withdrawals be done pursuant to FERC certificate authorization.

Section 717u of the NGA grants exclusive jurisdiction to the federal district courts to entertain suits to enforce these rights, liabilities, and duties created by FERC under the NGA:

> The District Courts of the United States and the United States courts of any Territory or other place subject to the jurisdiction of the United States shall have **exclusive jurisdiction** of violations of this chapter or the rules, regulations, and orders thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by, or to enjoin any violation of, this chapter or any rule, regulation, or order thereunder.

15 U.S.C. § 717u (emphasis added). The Fifth Circuit has held that a claim implicating a statute with an exclusive jurisdiction provision nearly identical to § 717u vests the federal courts with jurisdiction. In *Hawkins v. Nat'l Assoc. of Securities Dealers Inc.*, 149 F.3d 330, 332 (5th Cir. 1998), the plaintiff contended that the district court lacked jurisdiction. The district court denied plaintiff's motion and the Fifth Circuit affirmed, finding that Congress intended for the federal courts to have broad subject matter jurisdiction based on a provision in the Securities Exchange Act, 15 U.S.C. § 78aa, which provides: "The district courts of the United States ... shall have exclusive jurisdiction of violations of this chapter or the rules and regulations thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by this chapter or the rules and regulations thereunder." This provision is identical in all relevant aspects

to § 717u and should be interpreted and applied accordingly. *See also Sparta Surgical Corp. v. Nat'l Ass'n of Securities Dealers, Inc.*, 159 F.3d 1209, 1211-1212 (9th Cir. 1998) (finding that 15 U.S.C. § 78aa "unequivocally 'confers exclusive jurisdiction upon the federal courts for suits brought to enforce the Act or rules and regulations promulgated thereunder'"); *Cal. ex rel. Lockyer v. Dynegy, Inc.*, 375 F.3d 831, 841, 843 (9th Cir. 2004) ("*Dynegy*") (finding subject matter jurisdiction existed based on Federal Power Act exclusive jurisdiction provision almost identical to § 717u because the tariffs at issue "directly implicate the federal regulatory regime, were filed with FERC, and concern obligations directly and exclusively arising under regulations issued pursuant to the FPA").

By creating the NGA's exclusive jurisdiction provision, Congress has provided for broad subject matter jurisdiction for claims such as Enable's. The court in *Pacificorp v. Nw. Pipeline GP*, No. CV-99-PK, 2010 WL 3199950, *5 (D. Or. June 23, 2010), recognized as much in a case very similar to the instant matter. There, the court analyzed whether the defendant could invoke federal subject matter jurisdiction under § 717u to interpret a FERC tariff that was a part of a transport agreement. *Id.* at *4. After finding that tariffs are the equivalent of federal regulations, the court determined that the causes of action turned "on the meaning of provisions" in the tariff. *Id.* at *5-*6. The court then held that because the plaintiff sought to "enforce obligations [in the tariff] that squarely fall within the exclusive jurisdiction provision of the Natural Gas Act," the court had federal subject matter jurisdiction to determine the merits. *Id.* at *6. Relying on the Ninth Circuit's holding in *Sparta*, the court reasoned that where a plaintiff's claim is wholly or partially "predicated on a subject matter committed exclusively to federal jurisdiction," the district court properly has jurisdiction. *Id.* at *5. The court found that § 717u provided such exclusive jurisdiction and accordingly ruled that it had jurisdiction.

Here, similar to *Pacificorp*, Enable's CPCN is the equivalent of a federal regulation, and the interpretation and enforcement of the rights therein fall under the exclusive jurisdiction of this Court pursuant to § 717u. The CPCN necessarily implicates the federal regulatory regime as Enable's claims turn on the "meaning and provisions" of the rights and prohibitions created by the CPCN. Enable's rights at issue therefore arise under its CPCN and, as such, trigger the exclusivity provision of the NGA, and this Court's jurisdiction. The court in *Pacificorp* interpreted a case, *Sparta*, *supra*, which is virtually indistinguishable from the Fifth Circuit's ruling in *Hawkins,* in application to § 717u. This same persuasive reasoning should be applied in this instance. Thus, pursuant to the holdings in *Hawkins* and *Pacificorp*, jurisdiction in the district court is proper under 15 U.S.C. § 717u as Enable's claims arise under the NGA and are predicated on subject matter committed exclusively to federal jurisdiction.

Enable alleges that Defendants have violated and continue to violate Enable's federally created rights to the storage gas held pursuant to its CPCN, the NGA, and other federal law. Defendants' unauthorized withdrawal and resale of Enable's certificated storage gas violates the NGA and interferes with Enable's exclusive rights under its CPCN and federal law.

The withdrawal of Enable's storage gas is and has been affecting Enable's required public service under its CPCN and has forced it to alter its operations in the West Unionville Storage Facility. This persistent withdrawal of Enable's storage gas is substantially affecting Enable's rights and duties under its CPCN and the NGA, and affecting the use of its storage facility.[3] Thus, Enable properly invoked this Court's exclusive jurisdiction under § 717u to enforce its federal rights with regard to the federally certificated storage gas.

[3] Section § 717(a) of the NGA provides: "[T]he business of transporting and selling natural gas for ultimate distribution to the public is affected with a public interest."

As this particular set of facts, circumstances, and allegations are of first impression in the Fifth Circuit, Defendants are able to cite no cases that are directly on point. Instead, Defendants cite to cases that find that § 717u does not authorize federal jurisdiction over a private right of action under the NGA when the underlying claims are unrelated to the statute. In those cases, the parties uniformly attempted to enforce some type of additional or subsequent private property right or attached contractual right tertiary to the NGA rather than the *original* federal rights created and granted by FERC and the NGA in the CPCN that would trigger § 717u exclusive jurisdiction. *See Columbia Gas Transmission LLC v. Singh*, 707 F.3d 583 (6th Cir. 2013) (finding that a natural gas company could not enforce an easement agreement against private property owners under the NGA); *Clark v. Gulf Oil Corp.*, 570 F.2d 1138 (3d Cir. 1977) (finding that consumers cannot assert a private contract claim against a CPCN holder under the NGA); *Pennzoil Co. v. FERC*, 645 F.2d 360 (5th Cir. 1981) (finding that private natural gas contracts do not arise under NGA jurisdiction); *Pan Am. Petroleum Corp. v. Superior Court of Del. In & For New Castle Cnty.*, 366 U.S. 656, 664 (1961) (concluding that an ordinary private contract claim does not assert a claim under the NGA). In each of these cases, the plaintiffs' claims had at most a tangential relationship with the NGA and thus fell outside the reach of the exclusive jurisdiction provision of § 717u. *See Dynegy*, 375 F.3d at 841 (distinguishing *Pan Am. Petroleum Corp.*, 366 U.S. 656, by stating that the case is unremarkable insofar as it held that cases falling outside the scope of the exclusive jurisdiction provision are not subject to it).

Here, there is no such supplementary private right, agreement, or contract at issue that falls outside the exclusive jurisdiction provision. To the contrary, Enable seeks to enforce its federally created rights in its federally certificated storage gas granted by FERC to Enable in its CPCN under the NGA. The interpretation and enforcement of these original rights created under

federal law will depend upon an analysis of the rights and their scope. Enable's claims, as did the claims in *Pacificorp, supra*, trigger the exclusive jurisdiction provision of § 717u.

Defendants continually argue throughout their Motion to Dismiss that they are exempt from FERC regulation and, thus, the NGA exclusive jurisdiction provision cannot apply because they are "producer[s]."[4] Defendants' argument is meritless. The "production exception," 15 U.S.C. § 717(b), states that the NGA "shall not apply … to the production or gathering of natural gas." Although it is true that Defendants are not generally regulated as producers under the NGA for the production of their own native natural gas, no interpretation of this exception would give Defendants license to withdraw and then resell Enable's federally certificated storage gas. The primary underlying issue implicated in this matter is Enable's exclusive rights to and in the federally regulated gas in its storage facility, which under the governing standard of review is being withdrawn by Defendants from their wells without Enable's consent or permission, and without FERC's authorization. Doc. 1, ¶ 33.

In fact, the evidence will show that Defendants are not "producing natural gas" at all, but instead are operating their wells in a manner that withdraws natural gas from Enable's FERC-jurisdictional certificated storage facilities. This storage gas is an asset subject to FERC's jurisdiction for the purposes of setting Enable's rates, and is required to support the services, subject to FERC's jurisdiction, which Enable is required to provide pursuant to its CPCN and tariff. The taking of Enable's gas is no different than if Enable had a line of pipe laying on or near the surface, and a third party removed it and sold it for its own benefit, thereby removing from service a FERC-jurisdictional asset. While production of native gas is subject to only limited FERC jurisdiction, the so-called "production exception" articulated and relied upon by

[4] Defendants even try to "subtly" influence the Court by identifying themselves as "Producers" throughout their Motion to Dismiss.

Defendants is completely irrelevant to the facts of the instant matter. The only nuance is the fact that Defendants' well producing Enable's gas is offset from the surface perimeter of the West Unionville Storage Facility. The "production exception" would be no shield to Defendants had the offending well been located outside the surface perimeter of the West Unionville Storage Facility but the bottom hole of the offending well been within the subsurface perimeter of the West Unionville Storage Facility. They are still taking gas which is an asset regulated and controlled by FERC regulations and a certificate. This is true whether the bottom hole is only one foot outside the subsurface perimeter of the storage facility, a yard, a quarter mile, or a mile from the surface perimeter of the West Unionville Storage Facility. Enable will produce evidence that establishes with reasonable scientific certainty that more probably than not the gas withdrawn by Defendants is in fact Enable's storage gas and not native formation gas. That is exactly what Enable claims in the instant case.

As stated in 15 U.S.C. § 717f(c)(1)(A) "[n]o natural-gas company … shall engage in the transportation or sale of natural gas, subject to the jurisdiction of the Commission … unless there is in force with respect to such natural-gas company a certificate of public convenience and necessity issued by the Commission authorizing such acts or operations." Defendants readily admit that they have no such FERC certificate authorizing the withdrawal of storage gas which is in place to serve for the public convenience and necessity pursuant to a FERC-issued certificate, and that they have not applied to FERC to obtain such a certificate. As such, the only party with a federally granted right to withdraw this storage gas is Enable. Defendants are therefore unlawfully withdrawing and removing from interstate service Enable's storage gas and ignoring that Enable's federally certificated storage gas is subject to the jurisdiction of the Commission, the NGA, and other federal law. For these reasons, this Court should assume exclusive

jurisdiction under 15 U.S.C. § 717u to enforce the rights granted to Enable under its CPCN and the NGA, as pled in its Complaint, and deny Defendants' Motion to Dismiss.

### 2. Federal Subject Matter Jurisdiction is Also Proper Because There are Substantial Federal Rights at Issue

As stated above and disclosed on the face of the well-pleaded Complaint, there are substantial federal rights at issue under Enable's CPCN, the NGA, and other federal law that grant this Court jurisdiction under 28 U.S.C. § 1331. *See Gully v. First Nat'l Bank*, 299 U.S. 109, 113 (1936). A claim is deemed to raise substantial issues of federal law for the purpose of sustaining federal jurisdiction if the claim "necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable & Sons Metal Prods. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005); *Bd. of Comm'rs of Se. La. Flood Protection Auth.-E. v. Tenn. Gas Pipeline Co.*, 29 F. Supp. 3d 808, 853 (E.D. La. 2014), *appeal docketed*, No. 15-30162 (5th Cir. Feb. 24, 2015) ("*Bd. of Comm'rs*"). In assessing the legal sufficiency of plaintiff's jurisdictional assertions, the court looks to the allegations of the complaint alone as all allegations made therein are presumed to be true. *Paterson*, 644 F.2d at 523.

Here, the Complaint raises on its face the disputed federal issue of interpreting and enforcing Enable's rights to the West Unionville Storage Facility and the storage gas therein as granted in the CPCN. Doc. 1, ¶ 29. As such, determining the rights of Enable under its CPCN is a substantial federal question that is not only important to the parties, but has "broader significance" and importance to the public as consumers, and implicates FERC, under the federal regulatory system, which is charged with standardizing the federal storage of natural gas. *See Bd. of Comm'rs*, 29 F. Supp. 3d at 860; *Grable & Sons Metal Prods.*, 545 U.S. at 315. The

availability of a federal forum to interpret and enforce Enable's CPCN would not disturb any balance between federal and state judicial responsibilities, as the federal court is "particularly familiar with the federal regulatory scheme" that forms the foundation of Enable's claims. *Bd. of Comm'rs*, 29 F. Supp. 3d at 863. As such, the federal issues raised by Enable are substantial and the recognition of federal jurisdiction is in order here.

The district court also has jurisdiction if the essential right(s) of the petitioner to recover under the complaint will be sustained "if the Constitution or laws of the United States are given one construction or effect, and [will be] defeated if they receive another." *Gully*, 299 U.S. at 112; *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998). "Moreover, where federally protected rights have been invaded, … and a federal statute provides for a general right to sue for such invasion, federal courts may use any available remedy to make good the wrong done." *Bell v. Hood*, 327 U.S. 678, 684 (1946).

Here, Enable's federally protected rights under its CPCN pursuant to the NGA have been invaded by Defendants' withdrawal of Enable's storage gas. This Court's interpretation and resolution of those substantial federal rights to the storage gas under the NGA and federal law form the basis of Enable's claims and the relief that it seeks. Because Enable's right to proceed with its claims would be sustained "if the Constitution or laws of the United States are given one construction or effect, and [will be] defeated if they receive another" (*Gully*, 299 U.S. at 112), dismissal for want of subject matter jurisdiction would be improper.

Additionally, if the Court considers the Motion to Dismiss a "factual attack" rather than a "facial attack," dismissal for lack of subject matter jurisdiction is improper if the question of jurisdiction and the merits of an action are intertwined in a statute, such that they are dependent on the resolution of factual issues. *Williston Basin Interstate Pipeline Co. v. An Exclusive Gas*

*Storage Leasehold & Easement in the Cloverly Subterranean Geological Formation*, 524 F.3d 1090, 1094 (9th Cir. 2008) ("*Williston*"); *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004); *Santerre v. Agip Petroleum Co.*, 45 F. Supp. 2d 558, 567-568 (S.D. Tex. 1999). In other words, "where issues of fact are central both to subject matter jurisdiction and the claim on the merits, we have held that the trial court must assume jurisdiction and proceed to the merits." *Montez v. Dep't of Navy*, 392 F.3d 147, 150 (5th Cir. 2004).

The question of jurisdiction here rests and is dependent upon the resolution of the factual issues regarding Enable's rights in, and Defendants withdrawal of, Enable's federally certificated storage gas as established in Enable's CPCN under the NGA as alleged in the Complaint. Under the above rule of law, this Court should assume jurisdiction and allow Enable to proceed with the discovery necessary to prove its claims at the trial on the merits.

Finally, jurisdiction is not defeated by the mere possibility that a plaintiff might fail to state a cause of action on which it could recover. *Bell*, 327 U.S. at 682. In circumstances where "the defendant's challenge to the court's jurisdiction is also a challenge to the existence of a federal cause of action, the proper course of action for the district court … is to find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case." *Williamson v. Tucker*, 645 F.2d 404, 415 (5th Cir. 1981); *Bell*, 327 U.S. at 682; *see also Daigle v. Opelousas Health Care, Inc.*, 774 F.2d 1344, 1347 (5th Cir. 1985). The only exception to the above rule where a suit may be dismissed for want of subject matter jurisdiction is where the alleged claim "appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous." *Bell*, 327 U.S. at 682-683; *Clark*, 570 F.2d at 1144.

Here, Enable has alleged claims in its Complaint satisfying federal subject matter jurisdiction and denies that it fails to state a claim upon which relief may be granted. However, irrespective of whether this Court ultimately finds that relief may be granted to Enable, subject matter jurisdiction should be sustained because Enable's claims are not immaterial, insubstantial or frivolous, nor do Defendants claim them to be. For the reasons stated above, this Court should assume subject matter jurisdiction in this matter to determine resolution of Enable's substantial federal rights in and to the federally certificated storage gas at issue under its CPCN and the NGA and whether relief may be granted to Enable as prayed for, and deny Defendants' Motion to Dismiss.

### 3. Enable is not Required to Exhaust Its Administrative Remedies with FERC or the Louisiana Commissioner of Conservation

Defendants mistakenly assert that Enable's claims must be referred to FERC or the Louisiana Commissioner of Conservation. Defendants' argument rests squarely on the erroneous statement that Enable must expand the boundaries of the federal storage facility laid out in its existing CPCN and/or Louisiana 206 Orders to encompass Defendants' wells that are producing Enable's federally certificated storage gas. Doc. 5-1, pp. 18-19. This is incorrect. Nowhere under federal or Louisiana law is this required and nowhere in the Complaint has Enable claimed that it intends to take this action. Enable's claims instead seek to enforce Enable's rights and seek relief under the existing orders, the NGA, and federal law.

Moreover, the NGA gives FERC no authority to grant the relief sought by Enable in the Complaint,[5] nor does Title 30 of the Louisiana Revised Statutes grant such authority to the Commissioner of Conservation. Thus, there is no federal or state administrative process that

---

[5] FERC may be petitioned to issue a declaratory order, but the jurisdiction to enforce the rights under that order, including those rights in the existing CPCN, is granted exclusively to the district court under 15 U.S.C. § 717u. Additionally, FERC has been granted no statutory authority to grant damages. *See Wagner & Brown v. ANR Pipeline Co*., 837 F.2d 199, 205 (5th Cir. 1988).

would grant Enable the relief they seek. *Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 532 F.2d 412, 419 (5th Cir. 1976) (stating that the nature of the relief sought is a relevant consideration for the court when determining whether to defer to an agency). Instead, the NGA, 15 U.S.C. § 717u, clearly grants "exclusive jurisdiction" to the district courts to grant relief for "violations of [the NGA] or the rules, regulations, and orders thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created … thereunder." There is no requirement under the NGA for a party to exhaust any administrative remedies with FERC prior to requesting relief from a district court when there is no objection to the FERC order and/or a party is not claiming to be "aggrieved by an order." 15 U.S.C. § 717r(a).

Similarly, the Louisiana Commissioner of Conservation has no authority to grant Enable's relief under Louisiana Revised Statutes, Title 30. As stated by the Louisiana Supreme Court, "[b]ecause the commissioner cannot award damages, the question of plaintiff's damages is a matter for the courts" and is "within the conventional knowledge and expertise of a trier of fact." *Magnolia Coal Terminal v. Phillips Oil Co.*, 576 So. 2d 475, 483, 484 (La. 1991) (ultimately finding that the Commissioner of Conservation has no authority to award damages and thus it was proper for the court to determine facts and fix damages prior to any hearing by the Commissioner, even if other issues were to be subsequently referred to the Commissioner, who could utilize the court's findings in its determinations); *Corbello v. Iowa Prod.*, 02-0826, p. 19 (La. 2/25/03), 850 So. 2d 686, 701 (following *Magnolia Coal* in rejecting application of primary jurisdiction doctrine and finding that plaintiffs had "no duty to seek relief from an administrative agency before filing suit"); *Simoneaux v. Jolen Operating Co.*, No. Civ.A.04-2467, 2004 WL 2988506, *2-*3 (E.D. La. Dec. 15, 2004) (finding that there was no reason to stay the proceeding and defer to a state agency for the determination of damages). Thus, there is

also no requirement for this Court to refer this matter to the Louisiana Commissioner of Conservation for any determination prior to granting the relief that Enable seeks.

The court should be reluctant to refer matters to an agency and invoke the "doctrine of primary jurisdiction,"[6] unless absolutely necessary as it adds expense and delay and is often unwarranted.[7] *Miss. Power & Light*, 532 F.2d at 419. Enable submits that there is no question of authority in the case at hand and no issue within the Complaint that this Court is incapable of interpreting or enforcing without resorting to guidance from FERC or the Louisiana Commissioner of Conservation.

### 4. This Court May Exercise its Jurisdiction and Issue a Declaratory Judgment Under the Declaratory Judgment Act

Defendants again misrepresent the relief sought in Enable's Complaint in arguing that the Court should decline jurisdiction under the Declaratory Judgment Act, 28 U.S.C. § 2201. Enable is not trying to "circumvent the authority of the state and regulatory agencies with relevant technical and scientific knowledge to *expand* or determine the geological boundaries of subsurface hydrocarbon reservoirs and rock formations" as Defendants contend. Doc. 5-1, p. 20 (emphasis added). Nor does Enable seek to "*modify*" any orders and/or regulations as Defendants repeatedly suggest. Instead, Enable clearly asks this Court to "enter a judgment recognizing and affirming that the storage gas injected into the West Unionville Gas Storage Facility was and is at all times the property of [Enable] pursuant to the FERC Certificate and Order No. 206-D."

[6] "The scope of an agency's primary jurisdiction is a more pragmatic determination based on relative efficiency and expertise of courts vis-à-vis regulatory agencies. A dispute that falls within an agency's exclusive jurisdiction can, as the term indicates, only be resolved by the agency. On the other hand, an issue that falls within an agency's primary jurisdiction can be resolved by *either* a court or the agency." *Gulf Oil Corp v. Tenneco*, 608 F.Supp 1493, 1498 (E.D. La. 1985) (emphasis added).

[7] If there is a question of authority or knowledge on a matter, deference to an agency, such as FERC or the Louisiana Office of Conservation, is not mandatory, but is within the sound discretion of the trial court. *Simoneaux*, 2004 WL 2988506 at*2; *Mills v. Davis Oil Co.*, 11 F.3d 1298, 1304 (5th Cir. 1994); *Frank C. Minvielle, LLC v. IMC Global Operations, Inc.*, 380 F. Supp. 2d 755, 760 (W.D. La. 2004).

Doc. 1, ¶ 30. In other words, Enable seeks a declaratory judgment based on the *existing* CPCN and state orders, not to modify those orders.

By the creation of the Declaratory Judgment Act, Congress sought to place a remedial arrow in the district court's quiver; it created an opportunity to grant relief to qualifying litigants. *Wilton v. Seven Falls Co.,* 515 U.S. 277, 288 (1995). Although it is well-settled that a federal court has discretion whether to issue a declaratory judgment, it is not unfettered. *Travelers Ins. Co. v. La. Farm Bureau Fed'n, Inc.*, 996 F.2d 774, 778 (5th Cir. 1993). Courts may not dismiss requests for declaratory judgment relief on the basis of whim or personal disinclination. *Id*. Instead, the district court should consider the "practicality and wise judicial administration" that a declaratory judgment can offer, and address and balance the purpose of the Declaratory Judgment Act with factors for abstaining from issuing a declaratory judgment. *Wilton*, 515 U.S. at 288. The Court should therefore carefully weigh the significance of the declaratory judgment in the litigation at hand "because facts bearing on the usefulness of the declaratory judgment remedy, and the fitness of the case for resolution, are peculiarly within their grasp." *Wilton*, 515 U.S. at 289.

Enable has laid out all the necessary facts in its Complaint and after due proceedings this case will be fit for resolution. As stated above, there is no requirement or necessity to refer any of the matters to an administrative agency such as FERC or the Louisiana Commissioner of Conservation. Neither of these federal or state agencies can provide the relief that Enable seeks. This Court, on the other hand, can exercise its jurisdiction over the matter, consider the facts, interpret the existing federal and/or state orders, and provide the relief Enable seeks by issuing a declaratory judgment under 28 U.S.C. § 2201, recognizing and affirming Enable's substantial

rights in and to the federally certificated storage gas at issue. Accordingly, Defendants' 12(b)(1) Motion to Dismiss should be denied.

**B. Dismissal Pursuant to Rule 12(b)(6) Would Be Improper**

As with their Rule 12(b)(1) claim, Defendants misrepresent the standard of review for their Rule 12(b)(6) claim. Rule 12(b)(6) allows for dismissal if a plaintiff fails "to state a claim upon which relief can be granted." It is, however, "a disfavored motion and is rarely granted." *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986). A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the pleadings under Rule 8, which only requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A court reviewing a Rule 12(b)(6) motion must accept as true the factual allegations in the pleadings and construe the complaint "liberally … with all reasonable inferences drawn in the light most favorable to the plaintiff." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004). In order to meet the Rule 8 standard, a complaint need not include "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (Rule 8 does not require "detailed factual allegations").

A complaint states a claim that is plausible on its face where it contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *see also Twombly*, 550 U.S. at 556 (holding Rule 8 "does not impose a probability requirement at the pleading stage; it simply calls for enough fact

to raise a reasonable expectation that discovery will reveal evidence" sufficient to prove a claim).[8] In this case, Enable's factual allegations plainly exceed the requirements of Rule 8.

### 1. Enable's Claims are not a Collateral Attack on its Own FERC Certificate or Louisiana Commissioner of Conservation 206 Orders

Defendants again try to mischaracterize this lawsuit by arguing that Enable's claims are an impermissible collateral attack on its own FERC Certificate and Series 206 Orders. Enable is not trying to challenge or collaterally attack either the FERC or the Louisiana Commissioner orders. Enable does not seek through this lawsuit to "expand the boundaries" of its storage facility either through FERC or the Louisiana Commissioner of Conservation. Nor does Enable ask this Court in its Complaint to extend or expand its boundaries. As repeatedly stated throughout this Opposition, Enable instead asks this Court to enforce its rights under the *existing* certificate and orders. Further, there is no additional order(s) from FERC or the Louisiana Commissioner of Conservation that addresses Defendants' withdrawal of Enable's federally certificated storage gas that could be argued is being "collaterally attacked."

Contrary to Defendants' argument, "'[t]he collateral attack doctrine does not come into play unless there is an actual order of the Commissioner which in fact deals with the particular subject matter at issue….'" *Eagle Lake Estates, L.L.C. v. Cabot Oil & Gas Corp.*, 330 F. Supp. 2d 778, 785 (E.D. La. 2004), citing *Trahan v. Superior Oil Co.*, 700 F.2d 1004, 1020 (5th Cir. 1983). The subject matter of this litigation is Defendants' withdrawal of Enable's federally certificated storage gas, not a challenge to a finding by FERC or the Commissioner as laid out in any order. *See Trahan*, 700 F.2d at 1016-1017; *EOG Resources, Inc. v. Chesapeake Energy*

[8] Indeed, the plaintiff's burden is so limited in this regard that the court need not even find the allegations credible to overcome a Rule 12(b)(6) motion. *See, e.g., Twombly*, 550 U.S. at 557 ("a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely'"); *Neitzke v. Williams*, 490 U.S. 319, 327 (1989) ("Rule 12(b)(6) does not countenance ... dismissals based on a judge's disbelief of a complaint's factual allegations"); *Clark*, 794 F.2d at 970 ("[e]ven if it seems 'almost a certainty to the court that the facts alleged cannot be proved to support the legal claim,' the claim may not be dismissed so long as the complaint states a claim.").

*Corp.*, 605 F.3d 260, 266-267 (5th Cir. 2010). Enable's FERC Certificate and 206 Orders plainly do not directly address or make any such finding. Enable cannot attack a determination or factual finding of FERC or the Commissioner that has not yet been made.

Furthermore, "one sure way of ascertaining that the Commissioner's order is not being attacked, collaterally or otherwise, is to consider whether the Commissioner could have granted the plaintiffs the relief they seek." *Eagle Lake Estates, L.L.C.*, 330 F. Supp. 2d at 785 (finding that because plaintiffs sought damages for nonfeasance and the Commissioner had no authority to grant such relief, plaintiffs' claims were not an impermissible collateral attack on the Commissioner's order); *EOG Resources, Inc.*, 605 F.3d at 266 (finding that EOG did not seek relief [an accounting of the proceeds of the wells at issue] that could be granted by the Commissioner and therefore could not be a collateral attack on a Commissioner's order). Here, the relief Enable seeks, declaration of rights, damages, accounting, and any and all general and equitable relief available, cannot be granted by the Commissioner or FERC. If the Commissioner or FERC could grant the relief Enable seeks, Enable would have already petitioned the Commissioner of Conservation and/or FERC.

Defendants' reliance on *Williston*, 524 F.3d 1090,[9] a condemnation case, is misplaced.[10] In that case, Williston's amended complaint included a request for a Federal Rules of Civil Procedure Rule 71.1 and 15 U.S.C. § 717f(h) condemnation order. The Ninth Circuit dismissed Williston's condemnation claim and found that a CPCN holder's power of eminent domain extends only to property within the boundaries of its existing CPCN. *Id.* at 1099-1100.

---

[9] Defendants omit the fact that before dismissing Williston's condemnation claim for failure to state a claim, the Ninth Circuit affirmed Williston's right to federal subject matter jurisdiction for the claim under the NGA. *Williston*, 524 F.3d at 1095-1096.

[10] The *Pacificorp* decision, which post-dates *Williston*, recognized subject matter jurisdiction under the *Sparta* exception where the decision would of necessity involve interpreting and construing the FERC tariff. As in *Pacificorp*, Enable's CPCN is legally identical to the tariff and therefore *Williston* is not controlling here for the reasons set out in *Pacificorp*.

Here, Enable has not asserted its power of eminent domain through condemnation proceedings, and does not seek this type of relief from the Court through this lawsuit. Defendants' argument that Enable is "essentially asking this Court for the same remedy provided for by a condemnation claim but without paying for Producers' property" is therefore quite a stretch. Doc. 5-1, p. 22. As stated repeatedly throughout this Opposition, Enable is not asking this Court to expand or extend its facilities and, thus, Enable's claims in its Complaint cannot be classified as a collateral attack on Enable's existing CPCN, its 206 Orders, or any other FERC or Louisiana Commissioner of Conservation Order, and dismissal would therefore be wholly inappropriate.

### 2. Enable Has Properly Stated a Claim for Violation of the Correlative Rights Doctrine under the Louisiana Mineral Code

Finally, Defendants contend that Enable has failed to allege sufficient facts to give rise to a correlative rights claim under the Louisiana Mineral Code. Defendants have again misrepresented the facts pled in Enable's Complaint and then have misapplied those facts to their erroneous interpretation of the Mineral Code. The relevant provisions of the Mineral Code are unambiguous, and Enable has asserted a valid and facially actionable claim against Defendants for violation of the principles of correlative rights set forth in Louisiana Revised Statute §§ 31:9-11.

Article 9 establishes the correlative rights of landowners and owners of mineral rights in a common reservoir and provides that "[l]andowners and others with rights in a common reservoir or deposit of minerals have correlative rights and duties with respect to one another in the development and production of the common source of minerals." La. Rev. Stat. § 31:9 (2015). Article 9 has been interpreted to include an affirmative duty to account for the gas taken

from the common reservoir.[11] *Amoco Prod. Co. v. Thompson*, 566 So. 2d 138, 146 (La. App. 1st Cir. 1990).

Article 10 implicates liability for infringement on a party's rights in a common reservoir and provides that "[a] person with rights in a common reservoir or deposit of minerals may not make works, operate, or otherwise use his rights so as to deprive another intentionally or negligently of the liberty of enjoying his rights, or that may intentionally or negligently cause damage to him." La. Rev. Stat. § 31:10 (2015). Louisiana law is unambiguous that Article 10 "provides a remedy to a person with rights in a reservoir when the value of his rights has been diminished by the negligent or intentional acts of another." *Mobil Exploration & Producing U.S. Inc. v. Certain Underwriters Subscribing to Cover Note 95-3317(A)*, 01-2219 (La. App. 1 Cir. 11/20/02), 837 So. 2d 11, 37; *Amoco Prod. Co.*, 566 So. 2d at 146.

Enable has plainly established facts throughout its Complaint that give rise to an actionable claim and remedy against Defendants for violation of Enable's rights in the Ruston Vaughn reservoir under the principles of correlative rights as contemplated under the Mineral Code. Enable asserts that the relevant Orders issued by FERC and the Louisiana Department of Conservation established that, as between one another, Enable and Defendants share quasi-contractual, reciprocal rights in a common reservoir, namely the Ruston Vaughn reservoir. Doc. 1, ¶¶ 26-28. Enable also asserts that its rights have been diminished and interfered with by Defendants' actions in producing Enable's FERC certificated storage gas from the common Ruston Vaughn reservoir, and that these actions have resulted in Defendants' inappropriate and unjust enrichment to Enable's detriment, including Defendants' monetary benefits that are the result of the sale of Enable's federally certificated storage gas that was withdrawn from the

[11] This "[a]ccountability for gas production from the common reservoir is not the same as liability for damages, and the duty to account exists even in the absence of a tortious act." *Amoco Prod. Co.*, 566 So. 2d at 146.

common reservoir. Doc. 1, ¶¶ 33-34. Enable also seeks an accounting from Defendants of the total volume of gas produced by Defendants from the common Ruston Vaughn reservoir. Doc. 1, ¶ 32.

Defendants argue that they do not "share any rights with respect to the stored gas, the storage reservoir, or to the reservoir(s) from which the stored gas was initially produced … or the reservoir that is the source of the native gas." Doc. 5-1, p. 24. This is plainly erroneous. First and foremost, Defendants' understanding of the common mineral reservoir at issue in this case is incorrect. The common reservoir contemplated in the Complaint is the Ruston Vaughn reservoir, <u>not</u> the West Unionville Storage Facility itself, nor is it the reservoir from which the stored gas was initially produced. Doc. 5-1, p. 24. Defendants' analysis on this issue is therefore inherently flawed from the start. Defendants' argument that Enable does not allege to have any rights in "the reservoir that is the source of the native gas," is likewise incorrect. Doc. 5-1, p. 24. As stated in the Complaint, Defendants have been withdrawing Enable's federally certificated storage gas instead of native gas from the shared Ruston Vaughn reservoir. Enable's claims pertain to Defendants' actions which resulted in the production of its FERC certificated storage gas from that reservoir only. Enable is not asserting a claim for any rights in native gas, if any, produced by Defendants' wells from the Ruston Vaughn reservoir or claiming that there is any shared right in the West Unionville Storage Facility.

As stated in the Complaint and above, the shared Ruston Vaughn reservoir is the identified and indisputable source of the federally certificated storage gas being withdrawn by Defendants; and Defendants' withdrawal of this storage gas has unquestionably deprived Enable of its enjoyment of its rights in this storage gas. Doc. 1, ¶¶ 28-29. Based on these assertions,

Defendant has a duty to account for the gas taken from this common Ruston Vaughn reservoir. Doc. 1, ¶ 32; *see Amoco Prod. Co.*, 566 So. 2d at 146.

For the above reasons, Defendants' argument fails. It is apparent from the facts and allegations stated throughout the Complaint that Enable has asserted an actionable claim against Defendants under the Louisiana Mineral Code for the improper withdrawal of Enable's FERC certificated storage gas from the shared Ruston Vaughn reservoir in violation of Enable's correlative rights therein. As such, Defendants' request for dismissal of Enable's correlative rights claim must be denied.

## III. Conclusion

Enable has properly invoked this Court's jurisdiction under 28 U.S.C. §§ 1331 and 1337, the Natural Gas Act, 15 U.S.C. § 717 *et seq*., 28 U.S.C. § 2201, and federal law. Enable has also clearly stated claims within its Complaint upon which this Court may grant relief. Accordingly, Enable Mississippi River Transmission, LLC, prays this Court deny Defendants' Motion to Dismiss at the cost of Defendants.

Enable believes that this case, and a related case involving a different defendant, involve important issues of law that are matters of first impression in the Fifth Circuit. Enable believes that oral argument might be appropriate in this instance even though such motions are usually decided on briefs. Enable would welcome the opportunity for oral argument if the Court believes that oral argument may assist the Court in the proper resolution of Defendants' Motion to Dismiss involving these complex issues of first impression.

Respectfully submitted,

BRADLEY MURCHISON KELLY & SHEA LLC

By: /s/ David R. Taggart
David R. Taggart
Louisiana Bar Roll No. 12626

Kimberly C. Delk
Louisiana Bar Roll No. 28018

401 Edwards Street, Suite 1000
Reception Ninth Floor
Shreveport, Louisiana 71101
Telephone: (318) 227-1131
Facsimile: (318) 227-1141

- Attorneys for Enable Mississippi River Transmission, LLC

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was electronically filed on July 29, 2014. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ David R. Taggart
OF COUNSEL